UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IVAN J. STARK, JR., ) | | |
| Petitioner, ) | | |
| ) | No. 24 CV 50236 | |
| v. ) | Judge Iain D. Johnston | |
| ) | | |
| WARDEN BRIAN LAMMER, ) | | |
| Respondent. ) | | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Ivan Stark is a prisoner who, at the time he filed this case, was at FCI Thomson. Before the Court is his petition filed under 28 U.S.C. § 2241 challenging the Bureau of Prisons' computation of his sentence, specifically its calculation of First Step Act time credits towards his remaining sentence. For the following reasons, Mr. Stark's petition is denied.

Mr. Stark was arrested on November 27, 2018, and ultimately pleaded guilty to counts of bank fraud and aggravated identity theft. On July 30, 2020, he was sentenced to 96 months for the bank fraud and 24 months for the identify theft, with the sentences to run consecutively. His anticipated release date is January 24, 2026. *See* https://www.bop.gov/inmateloc/ (last visited August 14, 2025).

Mr. Stark argues that the Bureau of Prisons has not properly awarded him credits towards his sentence for recidivism reduction programming he has completed. Under the First Step Act of 2018, a prisoner may earn credits towards his or her sentence for successful participation in "evidence-based recidivism reduction programming or productive activities," 10 days for every 30 days of programming, plus an additional 5 days for every 30 days of programming for prisoners with a minimum or low risk for recidivating and who have not increased their risk level for 2 consecutive assessments. *See* 18 U.S.C. § 3632(d)(4)(A). The statute directs the Attorney General to "develop" a "risk and needs assessment system" that implements the First Step Act of 2018, including determining "when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities." *Id.* at § 3632(a)(6). The risk and needs assessment system is set out in 28 C.F.R. § 532.42, entitled "Earning First Step Act Time Credits." Under § 532.42(b)(3), "[a]n eligible inmate . . . may earn FSA Time Credit if he or she *is successfully participating* in EBRR [Evidence-Based Recidivism Reduction] programs or PAs [Productive Activities] that the Bureau has recommended based on the inmate's individualized risk and needs assessment." (emphasis added). The risk and needs assessments are completed "[a]fter the inmate's arrival to their designated facility for service of their sentence and during the initial admission and orientation phase." Bureau of Prisons Program Statement 5410.01 ¶ 5.

In his petition, Mr. Stark alleges four ways in which the Bureau of Prisons has failed to properly calculate his FSA credits: (1) he should have been earning credits from the day of his

arrest, November 27, 2018, or at least since the First Step Act of 2018 was implement on December 18, 2018; (2) he was denied credits while temporarily placed at the MCC in Chicago; (3) he was denied the extra 5 days of credit for every 30 days in the program after his recidivism risk dropped to low; and (4) courts should afford no deference to the Bureau of Prison's Program Statement 5410.01, citing in support *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

First, Mr. Stark contends that the Bureau of Prisons erred by failing to award him FSA credits for his time in pretrial custody, as well as the nearly year he spent at state and private-run facilities in Missouri, Oklahoma, and Mississippi, while en route to his designated facility, FCI Pollock, where he arrived on July 1, 2021. In support he notes that while at those non-BOP facilities he engaged in activities similar to the recidivism reduction programming activities in which inmates engage to earn FSA credits, for instance work "as an orderly, shower orderly, meal tray distributors, and various psychology and religious programs." Petition [1] at 3-4. However, under 28 C.F.R. § 532.42, an inmate earns FSA credits only when "he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment." And the individualized risk and needs assessment occurs "[a]fter the inmate's arrival to their designated facility." Bureau of Prisons Program Statement 5410.01 ¶ 5. It is undisputed that Mr. Stark arrived at his designated facility on July 1, 2021. He nevertheless contends that it is unfair to deny him credits from earlier because it was not his fault he spent nearly a year en route to his designated facility, and that during that year he was participating in programs similar to EBRR and PA programs. But under the relevant regulations, inmates earn FSA credits only for participating in programs "recommended based on the inmate's individualized risk and needs assessment," 28 C.F.R. § 532.42(b)(3), and because his individualized assessment had not yet occurred, those programs could not have been recommended based on an individualized assessment.

Mr. Stark also relies on the decision in *Myrick v. Ma'At*, No. 22 CV 5346, 2023 U.S. Dist. LEXIS 12746 (W.D. La. July 14, 2023), in which he contends the court held that an inmate begins earning FSA credits from the day they are taken into custody. In *Myrick*, an inmate brought a petition under 28 U.S.C. § 2241 arguing that the Bureau of Prisons failed to apply all 735 of his FSA credits towards his projected release date. But a magistrate judge concluded in a Report and Recommendation that the First Step Act allows no more than 365 credits to be applied towards the inmate's projected release date. *See Myrick v. Ma'At*, No. 22 CV 5346, 2023 U.S. Dist. LEXIS 123098, at *3 (W.D. La. June 8, 2023). The district judge accepted the magistrate judge's conclusion and dismissed the petition. *See Myrick*, 2023 U.S. Dist. LEXIS 12746, at *1. Although the magistrate judge noted that the petitioner "was taken into federal custody on December 21, 2018, and he has been eligible to earn credits ever since," *Myrick*, 2023 U.S. Dist. LEXIS 123098, at *2, the focus of the case was on how many credits an inmate can apply toward his or her sentence, not on when an inmate begins accruing those credits, and the magistrate judge's language does not stand for the proposition that every inmate begin accruing FSA credits their first day in federal custody.

Next, Mr. Stark contends that he was wrongly denied credits that should have accumulated during the 31 days he spent temporarily housed at the MCC in Chicago, while en route to his new designated facility, FCI Thomson. But under 28 U.S.C. § 523.41, an "eligible

inmate must be 'successfully participating' in EBRR Programs or PAs to earn FSA Time Credits," and an inmate "will generally not be considered to be 'successfully participating' in EBRR Programs or PAs in situations including, but not limited to . . . [d]esignation status outside the institution." 28 C.F.R. § 523.41(c)(1) and (4)(ii). Designation status outside the institution includes time spent "in-transit or at an in-transit facility." Bureau of Prisons Program Statement 5410.01 ¶ 5. Because Mr. Stark was in-transit, he was unable to successfully participate in programming during his time at the MCC in Chicago and so earned no FSA credits.

Next in his petition, Mr. Stark contends that the Bureau of Prisons neglected to award him the additional 5 days of credit for every 30 days in the program beginning in May 2022, when he contends his recidivism risk dropped from medium to low. But according to his own exhibit 14, his recidivism risk dropped to low in January 2023, not May 2022. Petition [1], Ex. 14. Under 18 U.S.C. § 3632(d)(4)(A), a prisoner begins earning the additional 5 days of credit not only if they are at a minimum or low risk of recidivism, but also if at the same time their risk level has not increased for two consecutive assessment. According to a Bureau of Prisons record attached to the government's response brief, Mr. Stark did not achieve that status until January 2024, when he was both at a low risk of recidivism *and* his risk level had not increased for two consecutive assessments. Declaration of Vannapha Voxgxay [16] at 14. At that point, he began earning credits at the 15-day rate. Mr. Stark did not file a reply brief and therefore has not challenged the accuracy of that Bureau of Prisons record. Accordingly, he has established no error in the rate at which the Bureau of Prisons calculated his credits.

Finally, Mr. Stark contends that the Bureau of Prisons' calculations of his FSA credits are improper because they are based on its own internal policies, rather than under the Fair Step Act of 2018 itself. In support he argues that the Bureau of Prisons "has hid behind the *Chevron* clause for forty years," and he anticipates the U.S. Supreme Court's upending of *Chevron* in *Loper Bright Enterprises v. Raimondo*. Mr. Stark anticipated correctly that in *Loper Bright* the Supreme Court would overrule *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), which had long afforded deference to agency interpretations of ambiguous statutes they administer. *See Loper Bright*, 603 U.S. at 412. But agencies' interpretations of their own regulations, as opposed to their interpretations of statutes they administer, have long been afforded deference not under *Chevron*, but rather under *Auer v. Robbins*, 519 U.S. 452 (1997), and *Auer* is unaffected by *Loper Bright*. *See United States v. Poore*, No. 22-3154, 2025 U.S. App. LEXIS 9941, at *7 (7th Cir. Apr. 25, 2025) ("the Supreme Court in *Loper Bright* did not purport to overrule or even modify *Auer*."). Accordingly, the Bureau of Prisons' promulgation of Program Statement 5410.01 is unaffected by *Loper Bright*.

## CONCLUSION

For the reasons given, Mr. Stark's petition [1] is denied. Mr. Stark is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Cruz need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the

deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

Date: August 14, 2025          By:    _____
                                      Iain D. Johnston
                                      United States District Judge